IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

ADAM STEWART, )
)
) 2:18-CV-00791-MJH
Plaintiff, )
)
vs. )
)
GEICO INSURANCE, GEICO )
CASUALTY COMPANY, GEICO )
GENERAL INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GOVERNMENT EMPLOYEES
INSURANCE COMPANY, GEICO
CORPORATION,

Defendants,

OPINION

Plaintiff, Adam Stewart ("Dr. Stewart"), brings the within action against Defendants, GEICO Insurance, GEICO Casualty Company, GEICO General Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company, GEICO Corporation, ("GEICO") for claims of Breach of Contract and Bad Faith pursuant to 42 Pa.C.S. § 8371 arising from an underinsured motorist (UIM) claim for injuries and damages sustained in a motor vehicle/pedestrian accident. GEICO moves for partial summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Bad Faith claim only. (ECF No. 29). The parties provided briefs, appendices, and concise statements of material facts. (ECF Nos. 30, 31, 32, 33, 34, and 35). The matter is now ripe for decision.

For the following reasons, GEICO's Motion for Partial Summary Judgment will be granted, and the Bad Faith claim (Count II) will be dismissed.

I. Factual Background

On September 6, 2013, Dr. Stewart was struck by a motor vehicle while he was a pedestrian crossing an intersection. (ECF No. 31 at ¶ 1). As a result of the accident, Dr. Stewart alleged that he suffered a concussion, post-concussion syndrome, L5-S1 disc bulge, L4-5 disc bulge, low back pain, lumbar radiculopathy, trauma induced disc degeneration, upper back pain, anxiety, depression, post-traumatic stress disorder, convergence insufficiency, right wrist pain, loss of sensation in the right wrist and forearm, cervicalgia, cervical radiculopathy, cervical strain, neck pain, foraminal narrowing at C5-C6, post-traumatic fibromyalgia, change in gait, difficulty focusing, and headaches. (ECF No. 1-2 at ¶ 17(a)-(w)).

On March 18, 2014, GEICO received notice of Dr. Stewart's claim for Underinsured Motorist (UIM) benefits. (ECF No. 34 at ¶ 19). GEICO assigned the claim to senior claims examiner, Danielle Pelletier. *Id.* at 13. For the next fifteen months, at nearly monthly intervals, Ms. Pelletier contacted Plaintiff's counsel for updates. (ECF No. 33-3 at pp. 83-167). As of February 17, 2015, Dr. Stewart's counsel had not provided GEICO with proof of the tortfeasor's liability limits. *Id.* at p. 93. On April 19, 2016, GEICO received an economic loss report, authored by Daniel Sloppy, regarding Dr. Stewart's past and future wage loss. Therein, Mr. Sloppy assumed Dr. Stewart was permanently disabled from returning to his pre-accident neuroscience research career and opined that Dr. Stewart's past and future economic losses totaled $ 2,005,298.94. (ECF No. 34 at ¶ 25). On April 19, 2016, Ms. Pelletier called plaintiff's counsel and requested proof for when Dr. Stewart stopped working. (ECF No. 33-3 at pp. 96-97). On June 8, 2016, Ms. Pelletier received additional medical records. *Id.* at p. 98. On July 29, 2016, GEICO received confirmation of the tortfeasor's limits of liability coverage. *Id.* at p. 99.

On September 30, 2016, Ms. Pelletier determined that GEICO needed a sworn statement from Dr. Stewart and an independent medical examination (IME). *Id.* She believed that a medical examination was necessary because the records reflected no head injury in the ER, a history of depression, Dr. Stewart continued to work until his grant ended in 2014, he had no medical treatment between 5/29/14 and 12/8/14, and Dr. Stewart was claiming past and future lost wages. (ECF No. 34 at ¶ 37). Further, the EMS records indicated that Dr. Stewart denied striking his head or losing consciousness and that the neurological exam indicated "no abnormal findings." (ECF No. 33-5). Likewise, the Emergency Department records indicated no head injury or loss of consciousness and a negative head CT scan. (ECF No. 33-6). At an October 3, 2013 visit, the treatment note for Dr. Stewart by Candice Ebbert indicated that he was still working and had a history of depression. (ECF No. 33-8). At Dr. Stewart's October 21, 2013 treatment visit with Alicia Puskar, Ph.D., she recommended that Dr. Stewart remain out of work for three weeks because he was symptomatic of a concussion and not functioning at an appropriate cognitive level. (ECF No. 33-10). Following a November 5, 2013 post-concussion medication management visit, treating physician Dr. Anderson noted in her records that Dr. Stewart had a past medical history of OCD and Tourette's syndrome. (ECF No. 33-11). On December 12, 2013, Dr. Puskar recommended that Dr. Stewart return to work on January 2, 2014. (ECF No. 33-14). At an April 29, 2014 visit with his family physician, Dr. Smuckler, for back pain follow-up, Dr. Stewart reported that he lost his job due to his physical symptoms. (ECF No. 33-16). At a March 3, 2015 visit with Dr. Adelsheimer for back pain follow-up, Dr. Stewart reported normal activities of daily living and exercising. (ECF No. 33-19). On November 9, 2015, Dr. Stewart underwent a neuropsychological evaluation where he attained high average and superior range scores on the Wechsler Adult Intelligence Scale-IV, average

scores for working memory, no impairment of speech and language, no impairment of perceptual and spatial ability, and no impairment of executive function. (ECF No. 33-24). All of these medical records supported Ms. Pelletier's September 2016 request for an IME.

Thereafter, as regards litigation concerning the accident at issue, on December 28, 2016, Dr. Stewart settled with the third-party tortfeasor's carrier for the tortfeasor's liability limits of $100,000. (ECF No. 1-2 at ¶ 25). GEICO received the transcript of Dr. Stewart's testimony in the third-party case sometime in January 2017. (ECF No. 33-3 at pp. 156-158)

On April 25, 2017, GEICO retained James D. Petrick, Ph.D. to conduct a neuropsychological examination of Dr. Stewart. Dr. Petrick was asked to specifically address the nature of any injuries Dr. Stewart suffered in the accident and to determine whether medical treatment for Dr. Stewart was reasonable and appropriate. (ECF No. 31-1 at p. 14). In his report, Dr. Petrick noted a "complicated premorbid psychiatric history" with psychosis, agitation, depression, severe anxiety, Tourette's syndrome, attention deficit hyperactivity disorder, possible autism spectrum disorder, and Asperger's. (ECF No. 31-1 at p. 14-15). After his examination, Dr. Petrick opined that Dr. Stewart suffered a concussion as a direct result of the accident; however, Dr. Petrick noted no ongoing "sequela," such as a residual neurocognitive deficit, psychiatric disorders, or post-traumatic stress disorder, attributable to the concussion. *Id.* at p. 18. Dr. Petrick further opined, that while Dr. Stewart's treatment prior to April 2017 was both reasonable and necessary, Dr. Stewart had made a complete recovery with no further treatment necessary. *Id.* With regard to Dr. Stewart's capacity to work, Dr. Petrick found no limitations. *Id.*

Defense counsel received Dr. Petrick's report on July 14, 2017 and provided it to Dr. Stewart's counsel on July 28, 2017. (ECF No. 31 at ¶¶ 7-8). On August 25, 2017, Plaintiff's

4

counsel communicated that Dr. Stewart's UIM claim was based more so upon musculoskeletal pain rather than upon his head injury. *Id.* at ¶ 9. Following that representation, GEICO retained Charles J. Burke, M.D. to evaluate Dr. Stewart's musculoskeletal pain through an independent medical examination. *Id.* at ¶ 10. On November 6, 2017, Dr. Burke conducted the IME. *Id.* In his report, Dr. Burke opined that, while Dr. Stewart sustained a soft tissue injury at the time of the accident, he found no evidence that related any significant injury or treatment to the accident. (ECF No. 31-1 at p. 27). In March 2018, GEICO extended an offer of $25,000 to settle Dr. Stewart's UIM claim. (ECF No. 34 at ¶ 39).

II.  Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere

existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

III. Discussion

Dr. Stewart brings a statutory bad faith action against GEICO under 42 Pa.C.S.A. § 8371 for GEICO's handling of his underinsured motorist (UIM) claim. Specifically, he contends his claim for bad faith arises from GEICO's a) unreasonably low settlement offer; b) improper reserve for his claim; c) failure to adequately investigate Dr. Stewart's claim; and d) unnecessary delay in investigating his UIM claim. (ECF No. 32 at p. 2).

The Pennsylvania bad faith statute provides in its entirety:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
(2) Award punitive damages against the insurer.
(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. To succeed on a bad faith claim, a plaintiff-insured must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir.2005); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994). Although the term "bad faith" is not defined in the statute, courts have subsequently determined that a variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with

6

the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999); see also *Terletsky*, 649 A.2d at 688. "The 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F.Supp.2d 580, 587 (E.D.Pa. 1999)) (quotations omitted). "Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Pilosi*, 393 F.3d at 367 (citing *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588 (E.D.Pa. 1999)); see also *Anderson*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) ("we conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages.").

   a. Unreasonably Low Settlement Offer.

GEICO contends that it cannot be liable for bad faith in a UIM claim where there is a bona fide value dispute. Dr. Stewart argues that the $25,000 offer from GEICO was an unreasonable valuation of his claim, considering his injuries, noneconomic losses, and $2 million economic loss claim. "Generally, Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses." *Seto v. State Farm Ins. Co.*, 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) (citing *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). However, "low-ball offers which bear no reasonable relationship to an insured's actual losses can constitute bad faith within the meaning of § 8371." *Seto*, 855 F. Supp. 2d at 430 (citing *Brown*, 860 A.2d at 501). In examining alleged bad faith conduct, "[c]ourts have routinely found that it is reasonable for an insurance company to rely on expert opinion in its

7

investigation into claims and accidents." *Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2016 WL 6962620, at *7 (M.D. Pa. Nov. 29, 2016). Specifically, "[a]n insurer can rely on IMEs of qualified health professionals who examine claimants in a usual and customary manner." *Seidman v. Minnesota Mutual Life Ins. Co.*, 40 F.Supp.2d 590, 594 (E.D.Pa.1997).

Here, GEICO's offer of $25,000, which equated to a claim value at $125,000,[1] was reasonable and supported by the record and expert opinions. At the time, Ms. Pelletier, GEICO's adjuster, decided to request and secure an IME in September 2016, she had received medical records that signaled the need for a further claim investigation. Her claim notes, as supported by claim documentation, indicated "no head injury in the ER. History of Depression. Continued to work. Lost Grant in 2014. No treatment from 5/29/14 until 12/8/14. Claims past and future lost wages." (ECF No. 34 at p. 36). As discussed earlier, Ms. Pelletier's notes are fully supported by the totality of Dr. Stewart's medical records. Thus, Ms. Pelletier had a reasonable basis to request and secure independent medical examinations in GEICO's investigation of the UIM claim.

As regards economic loss assessment, Dr. Stewart expected GEICO to accept and rely upon his expert, Daniel Sloppy's report. Dr. Sloppy's report and the documents he references supported GEICO's decision to seek further investigation. The report, which projected economic wage loss damages in excess of $2 million, assumed Dr. Stewart was permanently disabled. However, as Mr. Sloppy indicated in his report, the Social Security Administration denied Dr. Stewart's disability claim. Furthermore, Mr. Sloppy references one medical narrative from Aaron Smuckler, M.D., Dr. Stewart's family physician. Dr. Smuckler's narrative

---

[1] In UIM claims, the carrier is permitted a credit of the tortfeasor's policy limits when evaluating the claim. *Boyle v. Erie Ins. Co.*, 656 A.2d 941, 943 (Pa. Super. Ct. 1995). Here, the tortfeasor had a $100,000 liability policy.

was authored on July 16, 2015, eight months before Mr. Sloppy's report. Dr. Smuckler's last office visit with Dr. Stewart had occurred on December 2, 2013. Dr. Smuckler's narrative generally discusses Dr. Stewart's prognoses and treatment as gleaned from other providers; however, he provides no specific references to the sources of such information. Reliability aside, even Dr. Smuckler noted continued improvement in Dr. Stewart's condition. Dr. Smuckler's report, combined with the IME reports from Dr. Petrick and Dr. Burke, support that Ms. Pelletier had a reasonable basis to question Mr. Sloppy's critical assumption that Dr. Stewart was permanently disabled. Thus, with no other evidence to establish Dr. Stewart's economic losses other than Mr. Sloppy's report that assumes total disability, no reasonable juror could find bad faith by clear and convincing evidence from GEICO's $25,000 settlement offer to Dr. Stewart.

b. Improper Reserves for Plaintiff's Claim

Dr. Stewart also claims bad faith by virtue of GEICO's low reserves for this UIM claim. Dr. Stewart asserts that the reserve was not reasonable in light of his damages. In addition, Dr. Stewart argues that that GEICO should have offered him the full reserve amount of $55,000, rather than just $25,000. GEICO contends that it placed a reasonable value on Dr. Stewart's UIM claim. An insurance reserve is money set aside "to satisfy obligations that may arise under a claim." *Peco Energy Co. v. Insurance. Co. of N. America*, 852 A.2d 1230, 1232 n.3 (Pa. Super. Ct. 2004). Pennsylvania law requires an insurance company to set reserves aside when they are placed on notice of a possible loss arising under its policy. *See Keefer v. Erie Ins. Exchange*, No. 13-1938, 2014 WL 201123, at *3 (M.D. Pa. Mar. 7, 2014) (quoting *Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996)). However, the failure of a carrier to offer its full settlement authority does not constitute bad faith. *Zappile v. Amex Assur. Co.*, 928 A.2d 251, 262 (Pa. Super. Ct. 2007). Again, Dr. Stewart's burden of proof standard is clear and

9

convincing evidence. *See J.C. Penney Life Ins. Co.*, 393 F.3d at 367. Here, it follows that, because the Court finds no sufficient evidence of bad faith as to the $25,000 settlement offer, there is likewise no bad faith in GEICO's reserve for this UIM claim.

      c. Failure to Adequately Investigate

Dr. Stewart further claims bad faith, asserting that GEICO conducted an inadequate investigation. Dr. Stewart contends that GEICO adjuster, Ms. Pelletier, conducted no independent investigation until she referred the claim for an IME. GEICO contends that Dr. Stewart cannot explain how any additional investigation would have altered its evaluation. Where a plaintiff asserts a bad faith claim based upon a failure to investigate, "[a] plaintiff [...] must show that the outcome of the case would have been different if the insurer had done what the insured wanted done." *Blaylock v. Allstate Ins. Co.*, 2008 WL 80056, *13 (M.D.Pa. Jan.7, 2008) (citing *Zappile v. AMEX Assurance Co., 928 A.2d 251, 262 (Pa.Super.2007)* ). Here, Dr. Stewart has failed to demonstrate that GEICO would have drawn a different conclusion had it conducted any additional independent investigation. Even if GEICO had conducted its investigation in a manner described by Dr. Stewart, i.e. reviewing the economic loss report with experts, seeking medical authorizations, speaking to treating physicians, or speaking with the tortfeasor's defense counsel, (ECF No. 32 at pp. 7-8), it would have still reasonably led to the IME opinions of Drs. Petrick and Burke, who both concluded that Dr. Stewart's injuries had resolved. These opinions establish a reasonable basis for GEICO to contest the value of Dr. Stewart's UIM claim. Therefore, Dr. Stewart cannot meet his burden to show that a reasonable juror could find by clear and convincing evidence that GEICO would have evaluated Dr. Stewart's claim differently had it conducted an earlier or different investigation as argued by plaintiff's counsel. As such, Dr. Stewart's bad faith claim, in this regard, fails.

### d. Unnecessary Delay in Investigation

Dr. Stewart argues that GEICO acted in bad faith by delaying its handling of Dr. Stewart's UIM claim. GEICO argues that it remained proactive after it received notice of Dr. Stewart's UIM claim. In order for an insured to recover for bad faith from delay, an insured must demonstrate that "the delay is attributable to the defendant, that the defendant had no reasonable basis for the actions it undertook which resulted in the delay, and that the defendant knew or recklessly disregarded the fact that it had no reasonable basis to deny payment." *Thomer v. Allstate Ins. Co.*, 790 F.Supp.2d 360, 370 (E.D.Pa.2011).

As set forth in the factual background, above, much delay was attributable to actions and inactions on Dr. Stewart's behalf. Dr. Stewart's counsel was slow to respond to GEICO's requests for information, records and documentation to confirm Dr. Stewart's injuries and the tortfeasor's limits of liability, to produce third-party depositions, and to produce updates to Dr. Stewart's medical records. Further, Dr. Stewart changed the theory for his damage claims from neurological head injuries to musculoskeletal injuries. Such change caused delays in claim evaluation and decisions to secure relevant IME assessments. As such, no reasonable juror could conclude by clear and convincing evidence that GEICO acted in bad faith in the timeline of its investigation of Dr. Stewart's UIM claim. Thus, Dr. Stewart's claim for bad faith, in this regard, fails.

In addition to the above analyses and in consideration of the totality of the circumstances, no reasonable jury could find by clear and convincing evidence that GEICO acted in bad faith in its timeline for claim processing, in its claim evaluation, and in its offer for claim disposition and resolution. As such, Dr. Stewart's claim for bad faith recovery fails.

IV.  Conclusion

Upon consideration of the foregoing, the claim for Bad Faith asserted by Dr. Stewart, in each instance and in the totality of circumstances, fails to produce sufficient evidence for any jury to conclude bad faith by clear and convincing evidence.  As such, GEICO's Motion for Partial Summary Judgment is granted.  Dr. Stewart's claim for Bad Faith in Count II of his complaint is dismissed.   A separate order will follow.

BY THE COURT:

_____
Marilyn J. Horan
United States District Judge